## LITTLETON, SHERIFF, v. WYMAN, ASSIGNEE.

1. **Attachment**: LEVY: ABANDONMENT: INNOCENT PURCHASER. Where an attachment was levied upon personal property, but the property was not removed, but the receipt of a third person was taken for the property, which bound such person to deliver the property to the sheriff upon his demand or order, but neither the sheriff nor his custodian gave any attention to the property, but allowed the attachment debtor to deliver it to his assignee without objection or protest, and the assignee, with no notice of the attachment, sold it to another, who also had no notice; *held* that the sheriff had voluntarily abandoned the levy, and that he could not recover of the assignee for the conversion of the property.

*Appeal from Polk Circuit Court.*

SATURDAY, JUNE 19.

THIS is an action at law to recover the value of certain personal property, which it is alleged the defendant, as assignee of one Morris, wrongfully took possession of and sold. There was a trial to the court, and a judgment for the plaintiff. Defendant appeals.

*Barcroft & Bowen,* for appellant.

*O. F. Baylies* and *W. F. Conrad,* for appellee.

ROTHROCK, J.—On the seventh day of December, 1881, the Capital City Bank commenced an action in attachment against the Hawkeye Planing-mill Company. This company was composed of J. E. Morris, E. R. Childs and others. The writ of attachment was levied by the plaintiff, who was then sheriff of Polk county, upon certain personal property in the planing-mill, and upon a stock of lumber, the property of the company. The property levied upon in the mill consisted of machinery and tools used therein. Some of it was ponderous, and therefore not easily removed, and it was necessary and essential to the operation of the mill. The plaintiff went to the mill on the seventh day of December, 1881, to make a levy of the writ of attachment. The mill company had shortly before that sold all of its property to said J. E. Morris, who was successor to the company. Childs, a former partner, was at the mill, and he pointed out to the sheriff property that was subject to attachment. The sheriff made an inventory of the property, and gave the parties present to understand that it was levied upon by virtue of the writ, and intimated that he would close the mill. Childs informed the sheriff that there were some contracts to complete, and he didn't like to have the machinery stopped. Thereupon the sheriff took a receipt for the property from one Goeble. This receipt was for safe-keeping, and bound Goeble to deliver the property to the "sheriff upon his demand or order." Two days after the levy, said J. E. Morris, being then the successor of all the rights and property of the Hawkeye Planing-mill Company, made an assignment thereof to the defendant herein, for the benefit of all the creditors of said company, and delivered to the defendant full possession of all of said property, including that for which Goeble had receipted to the sheriff. Proceed-

ings in the attachment suit were delayed, by reason of an answer being filed, until the nineteenth day of February, 1883, when a judgment was rendered against all of the defendants therein, and an order was made for the sale of the attached property.

When Wyman took possession of the mill and property, he operated it for a month or two, and finished up some work that had been commenced, and then closed it up. He advertised the property for sale, but did not succeed in disposing of the same for nearly a year. After selling all of the property to one Gilchrist for the sum of $1,200, the defendant paid over the proceeds of the sale to certain creditors of the mill company under an order of court. When the special execution issued on the judgment in favor of the Capital City Bank, the property claimed to have been attached was not found at the mill. It does not appear where it was at that time. Neither the attachment plaintiff, nor the sheriff, nor his agent, Goeble, who executed the receipt to the sheriff, gave any attention to the property after the receipt was executed.

It is claimed by the defendant that if the levy ever was valid it was released by the subsequent conduct of the sheriff. The plaintiff testified upon this subject as follows: " I never received the property afterwards. I supposed the party receipting would let me know if any one interfered. I afterwards received a special execution for the sale of this property, I went with the execution and looked after the property. Before I could get there the property was gone, and I returned the execution without serving it. This was some six or eight months after the levy of the writ of attachment. * * *" This last statement is a mistake. The writ of attachment was issued on the seventh day of December, 1881, and whatever was done in the way of a levy was on the same day. The judgment upon which the special execution issued was not rendered until February 19, 1883. The plaintiff further testified as follows: " I think

Mr. Morris expected to make some settlement of the matter within a few days. That may be the reason why we didn't look more particularly for the machinery, and I just let it go, supposing the party working there would let me know if anything happened. When I take a man's receipt for property levied on I generally rely on that party to look after the property until I have something else to do with it."

We think it is very plain that the plaintiff abandoned all claim to the possession of the property. He made Goeble his agent, and put him in possession, and took his receipt for the property. It does not appear that Goeble did anything, by word or act, in the way of asserting any possession over or control of the property. He was the representative of the sheriff, and permitted Morris to deliver the property to Wyman without so much as advising Wyman that any levy was claimed to have been made thereon, and Wyman had no such knowledge until long after he took possession; and when he learned of the levy he was warranted in believing that it had been abandoned, and this belief was verified by the fact that no claim was made upon him for the property until he had sold it as assignee, and until more than two years after it came into his possession. This action was commenced on the twenty-second day of December, 1883. An attachment lien upon personal property is retained only by holding possession of the property in some manner, and the lien is lost by a voluntary surrender of possession. That is precisely what was done by the plaintiff in this case.

REVERSED.